IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | NO. 3:13-cr-00012-1 |
| v. | ) | |
| | ) | JUDGE RICHARDSON |
| | ) | |
| CHARLES JEFFREY EDWARDS | ) | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant's Motion for Compassionate Release (Doc. No. 475, "Motion"), whereby Defendant seeks reduction of his 72-month sentence and immediate release from the custody of the Bureau of Prisons ("BOP"), pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Like numerous other federal inmates in this district around the country, Defendant claims that the ongoing COVID-19 pandemic, as applied to his specific situation—including his particular medical profile and the current and developing circumstances in the BOP facility where he is confined—constitutes "extraordinary and compelling reasons" warranting so-called "compassionate release" under Section 3582(c)(1)(A)(i).

The Government has filed a response in opposition (Doc. No. 477), which does not address the Motion on the merits but instead claims the Motion is premature because Defendant has not administratively exhausted his remedies within the BOP as is, accordingly to the Government, absolutely required under Section 3582(c)(1)(A)(i). The Government claims that the exhaustion requirement set forth within this provision—which contemplates a defendant's motion for compassionate release "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the

receipt of such a request by the warden of the defendant's facility, whichever is earlier"—[1]is unqualifiedly mandatory and cannot be disregarded by the Court.[2] Since Defendant has neither (i) fully exhausted his administrative rights to appeal a failure of the BOP to bring a compassionate release motion, nor (ii) waited 30 days since requesting that the BOP bring such a motion, the Government argues, the Motion is premature and thus should either be denied now without prejudice or stayed pending the occurrence of the earlier of alternatives (i) and (ii) above.[3]

In reply, Defendant does not dispute that the exhaustion requirement has not been satisfied. Instead, he asserts that in this particular case, the Court can and should disregard the exhaustion requirement and thus should decide the Motion now, without awaiting the time of exhaustion. (Doc. No. 478). The Court disagrees, for the reasons set forth below, and thus denies the Motion without prejudice to being refiled after the time of exhaustion.

## DISCUSSION

The issue currently before the Court—*i.e.*, whether the Court can disregard the exhaustion requirement in the case of an inmate seeking compassionate release based on the COVID-19 pandemic's effect or potential effect on the inmate—is, relatively speaking, extremely novel. Nevertheless, the Court does not write on a clean slate, but rather already has available guidance from other courts around the country. The Sixth Circuit has not ruled upon or addressed this issue in any way. And it appears that until last week, only one circuit had addressed this issue, namely,

---

[1] The Court here uses the shorthand term "exhaustion" to refer to the occurrence of either of these, even though the second occurrence does not constitute exhaustion per se but rather a basis to excuse the defendant from waiting for exhaustion to occur. The Court likewise uses the term "exhaustion requirement" to refer to what the statute prescribes as a requirement that either one or the other occurrence takes place before a defendant may file a motion for compassionate release.

[2] The Court intentionally frames the issue as whether the Court may "disregard" this requirement because it finds this term to here be more appropriate than the term "excuse" or the term "waive," which are sometimes used in this context.

[3] The time of such occurrence will be referred to hereinafter as the "time of exhaustion."

the Third Circuit in *United States v. Raia*, 954 F.3d 594 (3d Cir. 2020), decided at the beginning of this month. The Court realizes that *Raia* did not specifically state that courts could *never* disregard the exhaustion requirement, but it does seems to assume or imply this, and as further discussed in cases quoted below, it tends to support the notion that courts cannot disregard the exhaustion requirement. Earlier this week, the Fifth Circuit happened to mention the issue without deciding (and without being called upon to decide) it.

> Second, our reasoning on [the Prisoner Litigation Reform Act's] exhaustion requirement does not foreclose federal prisoners from seeking relief under the First Step Act's provisions for compassionate release. *See* 18 U.S.C. § 3582(c)(1)(A)(i). Though that statute contains its own administrative exhaustion requirement, several courts have concluded that this requirement is not absolute and that it can be waived by the government or by the court, therefore justifying an exception in the unique circumstances of the COVID-19 pandemic. *See, e.g.*, *United States v. Russo*, No. 16-cr-441 (LJL), 2020 WL 1862294, at *4–5 (S.D.N.Y. Apr. 14, 2020) (holding that, "[d]espite the mandatory nature of [the statute's] exhaustion requirement," the exhaustion bar is "not jurisdictional" and can therefore be waived); *United States v. Smith*, No. 12 Cr. 133 (JFK), 2020 WL 1849748, at *2–3 (S.D.N.Y. Apr. 13, 2020) (citing cases); *see also Vigna*, 2020 WL 1900495, at *5–6 (identifying the difficulties of the First Step Act exhaustion question while ultimately deferring a ruling until the petitioner exhausted his remedies); *but see United States v. Raia*, 954 F.3d 594, —— (3d Cir. 2020); *United States v. Clark*, No. 17-85-SDD-RLB, 2020 WL 1557397, at *3 (M.D. La. Apr. 1, 2020).

*Valentine v. Collier*, No. 20-20207, 2020 WL 1934431, at *8 (5th Cir. Apr. 22, 2020).

Of course, Third Circuit and Fifth Circuit opinions—even ones that set forth applicable holdings and not mere observations or other dicta—are not binding on this Court. Neither are district court opinions from around the country, including those from within this circuit. Nevertheless, the Court does find it telling and persuasive that cases from district courts within the Sixth Circuit—for this Court, a particularly relevant subset of district court cases, even if they do not rely on (non-existent) Sixth Circuit precedent—have overwhelmingly found that the exhaustion requirement cannot be disregard.

The Court below quotes in some detail from an opinion from, as far as the Court can tell, every district judge in this circuit that has addressed the issue and mentions *Raia*.[4] It does so for several reasons. First, so doing serves to show how dominant the view that courts may not disregard the exhaustion requirement is within the circuit. Second, so doing serves to describe the reasons supporting this view, including those suggested in *Raia*. Finally, except for the last case set forth below, such descriptions reflect the Court's thinking on the issue, and collectively do so in such a manner and degree that the Court could not hope to improve upon their collective wisdom and analytical rigor.

To summarize in advance, with one exception, every case either expressly held, or (in one case, *United States v. Girod*, No. CR 5:15-087-DCR, 2020 WL 1931242 (E.D. Ky. Apr. 21, 2020) (Reeves, J.)) strongly implied that the exhaustion requirement could not be waived.

1. Case law from Eastern District of Kentucky

In *United States v. Cornett*, No. CR 7:10-2-KKC, 2020 WL 1912211 (E.D. Ky. Apr. 20, 2020) (Caldwell, J.), the court explained:

> Defendant moves the Court to modify that sentence under 18 U.S.C. § 3582(c)(1)(A), which provides for what is commonly referred to as "compassionate release." The defendant asserts that he faces a high risk of death from the novel coronavirus disease COVID-19 because FCI Gilmer, where he is incarcerated, has failed to take adequate steps to protect prisoners from the virus.
>
> Prior to the First Step Act, PL 115-391, 132 Stat 5194 (Dec. 21, 2018), a motion for compassionate release could be brought by only the director of the Bureau of Prisons (BOP), not the defendant. *See* 18 U.S.C. § 3582(c)(1)(A) (2017). The First Step Act amended § 3582(c)(1)(A) to allow a defendant to file a motion for such relief on his own, but only if he has first "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or if 30 days have lapsed since the warden of the defendant's facility received the defendant's request to file a motion on his behalf, whichever is

---

[4] Some of these opinions are from a district judge who has issued multiple opinions finding that he or she cannot disregard the exhaustion requirement. However, the Court, herein quotes only a single opinion from any one judge.

earlier. 18 U.S.C.A. § 3582(c)(1)(A); PL 115-391, 132 Stat 5194 § 603 (Dec. 21, 2018).

The defendant does not assert that he has met either of these prerequisites to filing this motion. Instead, he argues that the Court should waive these prerequisites given the dangers posed by COVID-19. These prerequisites are jurisdictional, however, meaning that this Court has no power to grant relief on a motion for compassionate release unless the prerequisites are met.

The Supreme Court has recently addressed whether statutory filing prerequisites should be deemed to limit the jurisdiction of the court. *Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843, 1848 (2019). As would be expected, it all depends on the wording of the statute at issue. "If the Legislature clearly states that a prescription counts as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue; but when Congress does not rank a prescription as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Id.* (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515-16 (2006)) (brackets omitted). In *Fort Bend*, the Supreme Court determined that Title VII's requirement that a plaintiff file a complaint with the EEOC before filing an action in court was not jurisdictional because it does not "speak to a court's authority" or "refer in any way to the jurisdiction of the district courts." *Id.* at 1850-51 (quoting *E.P.A. v. EME Homer City Generation, L.P.*, 572 U.S. 489, 512 (2014) and *Arbaugh*, 546 U.S. at 515).

Unlike the Title VII provisions, however, § 3582(c) does speak to the Court's authority to modify a defendant's sentence after it has been imposed. The statute explicitly states that this Court "may not" modify a prison term except in certain delineated circumstances. One of these circumstances is when a defendant brings a motion for compassionate release, but only if the defendant has first fully exhausted his administrative remedies or given the warden of the prison where he is incarcerated 30 days to respond to the defendant's request that the BOP file such a motion on his behalf. Those circumstances do not exist here. Thus, by the plain language of the statute, the Court "may not" modify the defendant's sentence.

While the Sixth Circuit has not addressed this issue, the Third Circuit has, also in the context of a defendant's motion for compassionate release that cited COVID-19 concerns. The Third Circuit determined that that the defendant's failure to comply with the statutory prerequisites before asking the court for compassionate release was *"a glaring roadblock foreclosing compassionate release at this point." United States v. Raia*, No. 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020).

Further, the mandatory language of the statute "means a court may not excuse a failure to exhaust, even to take [special] circumstances into account." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). With a statutory exhaustion requirement, "Congress sets the rules – and courts have a role in creating exceptions only if Congress wants them to." *Id.* at 1857. "[M]andatory exhaustion regimes,

foreclose[e] judicial discretion." *Id.* Here, the rules set by Congress prohibit this Court from modifying a defendant's sentence unless the defendant first exhausts the BOP's administrative remedies, or the warden fails to timely act on the defendant's request.

The Court recognizes that these are unsettling times for everyone, including prisoners. But in such a context, the exhaustion requirement of the compassionate release statute is perhaps most important. *See Raia*, 2020 WL 1647922, at *2 *("Given BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance"* amid the risks posed by COVID-19). The requirement recognizes that the BOP is better positioned than the courts to first assess issues such as a defendant's health, the adequacy of the measures taken by a particular place of incarceration to address any health risks, the risk presented to the public by a defendant's release, and the adequacy of a defendant's release plan.

In his March 26, 2020 memorandum to the BOP director addressing the COVID-19 pandemic, the Attorney General recognized that "many inmates will be safer in BOP facilities" but that, for other inmates, "home confinement might be more effective in protecting their health." (DE 95-1, Memorandum.) He directed the BOP to "consider the totality of the circumstances for each individual inmate," including the defendant's age and vulnerability, the security level of the facility in which the defendant is incarcerated, the inmate's conduct while in prison, the inmate's score under PATTERN, the inmate's re-entry plan, and the inmate's danger to the community. In his April 3, 2020 memorandum, the Attorney General made the finding that "emergency conditions are materially affecting the functioning of the [BOP]," but directed the BOP to continue making "the careful, individualized determinations BOP makes in the typical case." (DE 95-2, Memorandum.) The Attorney General recognized that "[e]ach inmate is unique and each requires the same individualized determinations that we have always made in this context." The BOP is the institution with the expertise to conduct this analysis in the first instance, not a court.

On April 5, 2020, the BOP announced that it "has begun immediately reviewing all inmates who have COVID-19 risk factors ... to determine which inmates are suitable for home confinement." https://www.bop.gov/resources/news/20200405_covid19_home_confinement.jsp. This review is being taken automatically by the BOP. The BOP has specifically advised that "[i]nmates do not need to apply to be considered for home confinement." *Id.* "Case management staff are urgently reviewing *all* inmates to determine which ones meet the criteria established by the Attorney General." *Id.* (emphasis added).

The statute itself provides an exception to the exhaustion requirement where the warden fails to respond to the defendant's request within 30 days. Given the directive of the Attorney General in his April 3, 2020 memorandum that the BOP

move "with dispatch" and that "time is of the essence," it is expected that wardens will conduct their analyses well before the end of the 30-day period. The BOP states that it has "increased resources to review and make appropriate determinations as soon as possible." *Id.* (emphasis added). The Court, however, has no authority to alter the 30-day statutory time period.

*Id.* at *1–3 (emphasis in original). The next day, in *Girod,* the court explained:

> Girod tendered a supplement to his motion on March 31, 2020, seeking a sentence reduction due to the possibility that he might contract COVID-19 while in custody. [Record No. 164] But unlike Girod's other claims, there is no indication that he pursued, let alone exhausted, his administrative remedies with respect to this claim. [*See* Record Nos. 162-2; 162-3.] *See* [*Raia*, 2020 WL 1647922, at *2]; *United States v. McCann*, No. 5: 13-052, 2020 WL 1901089, *1-2 (E.D. Ky. Apr. 17, 2020) (requiring administrative exhaustion for COVID-19 related compassionate release motions). Accordingly, this request will be denied.

*Girod*, 2020 WL 1931242*,* at *3.

    2.  Case law from Northern District of Ohio

In *United States v. Black*, No. 5:18-CR-646-1, 2020 WL 1930149 (N.D. Ohio Apr. 21, 2020) (Lioi, J.), the court explained:

> Prior to 2018, only the Bureau of Prisons ("BOP") could move a district court under § 3582(c)(1)(A) for the compassionate release of a federal prisoner. On December 21, 2018, the First Step Act amended 18 U.S.C. § 3582(c)(1)(A) to allow prisoners to directly petition courts for compassionate release. The amendment provides prisoners with two direct routes to court: (1) file a motion after fully exhausting administrative appeals of the BOP's decision not to file a motion for compassionate release, or (2) file a motion after "the lapse of 30 days from the receipt ... of such a request" by the warden of the prisoner's facility. 18 U.S.C. § 3582(c)(1)(A). No exceptions to the exhaustion requirement are listed in the statute.
>
> Black does not represent that he has exhausted all administrative rights to appeal the BOP's failure to bring a motion on his behalf, or that 30 days has passed since the warden of his facility received a request from him to file such a motion. While he suggests that he "may not have met the exhaustion requirement by the statute, he requests this Court waive the requirement under" the "dire and narrow circumstances" surrounding the pandemic and its impact on FCI Elkton. (Doc. No. 98 at 644.)
>
> Courts are split on whether a district court may waive the exhaustion and 30-day requirement due to the exigent circumstances presented by COVID-19. *Compare United States v. Zukerman*, 16 Cr. 194 (AT), 2020 WL 1659880, at *3

(S.D.N.Y. Apr. 3, 2020) (waiving exhaustion requirement in light of COVID-19); *United States v. Colvin*, No. 3:19cr179 (JBA), 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020) (same); with [*Raia*, 2020 WL 1647922, at *2] (finding exhaustion requirement in § 3582 mandatory); *United States v. Alam*, No. 15-20351, 2020 WL 1703881, at *2 (E.D. Mich. Apr. 8, 2020) (collecting cases finding that "a failure to satisfy 18 U.S.C. § 3582(c)(1)(A)'s filing requirements bars defendants from filing motions for compassionate release, and that the judiciary has no power to craft an exception to these requirements for defendants seeking release during the COVID-19 pandemic"); *see also United States v. Johnson*, No. RDB-14-0441, 2020 WL 1663360, at *2 (D. Md. Apr. 3, 2020) (holding that the "exhaustion requirements of § 3582(c)(1)(A) are jurisdictional in nature, and [the district] court may not expand its jurisdiction by waiving such requirements").

In *Raia*, the Third Circuit ruled that the fact that the petitioner did not wait the requisite 30-day period before seeking a compassionate release from the district *"present[ed] a glaring roadblock foreclosing compassionate release[.]" Raia*, 2020 WL 1647922, at *__ [*sic*]. In so ruling, the court explained:

> We do not mean to minimize the risks that COVID-19 poses in the federal prison system, particularly for inmates like Raia [68 year old individual with diabetes and "heart issues"]. But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread. *See generally* Federal Bureau of Prisons, *COVID-19 Action Plan* (Mar. 13, 2020, 3:09 PM), https://www.bop.gov/resources/news/20200313_covid19.jsp.
> Given BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance. And given the Attorney General's directive that BOP *"prioritize the use of [its] various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic,"* we anticipate that the exhaustion requirement will be speedily dispatched in case like this one. Memorandum from Attorney Gen. to Dir., Bureau of Prisons 1 (Mar. 26, 2020), https://www.justice.gov/file/1262731/download. So we will deny Raia's motion.

The Court agrees with the reasoning and logic of the Third Circuit. In addition to a lack of any indication in the language of § 3582(c)(1)(A) that the exhaustion requirement is discretionary or may be waived, the exhaustion requirement serves the important purpose of allowing the BOP—an agency that is in a better position to understand an inmate's health and circumstances relative to the rest of the prison population and identify "extraordinary and compelling

reasons" for release—the opportunity to address such requests in the first instance. Accordingly, the Court "will not read an exception into § 3582(c)(1) which does not exist[,] and Black's motion is denied for failure to exhaust his administrative remedies. *See Johnson*, 2020 WL 1663360, at *6 (denying inmate's motion for compassionate release for failure to exhaust administrative remedies).

*Id.* at *2–3 (emphasis in original).

   3. Case law from Eastern District of Michigan.

In *United States v. Alam*, No. 15-20351, 2020 WL 1703881 (E.D. Mich. Apr. 8, 2020) (Cox, J.), the court explained:

> Here, Alam has not provided any indication that he has exhausted all of his administrative rights to appeal the BOP's failure to bring a motion on his behalf. Thus, the first condition is not met. And, Alam requested a compassionate release from FCI Milan's warden on March 25, 2020—only ten days before he filed his pending motion. (ECF No. 331-2). Thus, the second condition is not met.
>
> Anticipating this roadblock to his motion, Alam argues that the Court can "create an exception to the 30-day period set by Congress." (ECF No. 331, PageID 2539). The Court disagrees. The text of 18 U.S.C. § 3582(c) defines mandatory conditions precedent to a defendant filing a motion under that section. When Congress provides a statutory exhaustion provision, "courts have a role in creating exceptions only if Congress wants them to." *Ross v. Blake*, ––– U.S. –––, 136 S. Ct. 1850, 1857, 195 L.Ed.2d 117 (2016). "For that reason, mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion." *Id.* Thus, even if an exception to 18 U.S.C. § 3582(c)(1)(A)'s filing requirements for defendants is appropriate during the COVID-19 pandemic, the Court lacks authority to craft such an exception.
>
> In the past few days, many other courts around the country have also concluded that a failure to satisfy 18 U.S.C. § 3582(c)(1)(A)'s filing requirements bars defendants from filing motions for compassionate release, and that the judiciary has no power to craft an exception to these requirements for defendants seeking release during the COVID-19 pandemic. *See, e.g.*, *United States v. Raia*, ––– F.3d –––, 2020 WL 1647922 at *2-3 (3rd Cir. April 2, 2020) (stating that 18 U.S.C. § 3582(c)'s exhaustion requirement foreclosed compassionate release and that "any remand would be futile"); *United States v. Holden*, 2020 WL 1673440 at *10 (D. Or. April 6, 2020) ("Because Defendant has not satisfied the exhaustion provision ... this Court lacks authority to address Defendant's motion for reduction of sentence."); *United States v. Rivers*, 2020 WL 1676798 at *2 (D. V.I. April 6, 2020) ("Nor is the Court permitted, as Defendant suggests, to waive the exhaustion requirement."); *United States v. Johnson*, 2020 WL 1663360 at *6 (D. Md. April 3, 2020) ("In summary, this Court will not read an exception into § 3582(c)(1)

which does not exist."); *United States v. Woodson*, 2020 WL 1673253 at *3-4 (S.D.N.Y. April 6, 2020) ("Where Congress has with sufficient clarity mandated exhaustion, courts will not read exceptions into statutes.") (quotations and citations omitted); *United States v. Weiland*, 2020 WL 1674137 at *1 (S.D.N.Y. April 6, 2020) ("Defendant is incorrect that the Court has authority to waive the administrative exhaustion requirements stated in § 3582."); *United States v. Perry*, 2020 WL 1676773 at *1 (D. Colo. April 3, 2020) (concluding that Defendant's argument that the court could read an exception into the exhaustion requirement was "unpersuasive" and "unsupported by case law"); *United States v. Carver*, 2020 WL 1604968 at *1 (E.D. Wash. April, 1, 2020) (stating "the administrative exhaustion requirement admits of no exception" and "[t]he Court's hands are bound by the statute.")

*Id.* at *2. One week later, in *United States v. Mathews*, No. 14-CR-20427-02, 2020 WL 1873360 (E.D. Mich. Apr. 15, 2020) (Ludington, J.), the court explained:

> Defendant has not exhausted his claims with the BOP. His motion provides that he has asked his case manager for this relief, but that he "must wait at least 30 days for a response." ECF No. 314 at PageID.2063. Rather than waiting for a decision by the BOP, he asks that the Court grant him relief due to his "extraordinary circumstances."
>
> Defendant has not met the administrative remedy exhaustion requirements of 18 U.S.C. § 3582(c)(1)(A)(i). The statute does not contain the type of exception contemplated by Defendant. Granting such an exception would rob the BOP of the opportunity to address Defendant's request. This view is shared by courts across the country that have declined to waive the administrative remedy exhaustion requirement during the COVID-19 pandemic. *See, e.g.,* [*Raia*, 2020 WL 1647922, at *2] ("Given BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance."); [*Woodson*, 2020 WL 1673253]; [*Alam*, 2020 WL 1703881, at *2] (compiling cases denying motions for compassionate release related to COVID-19 where defendants have not exhausted administrative remedies).
>
> Defendant cites to two opinions from the Southern District of New York that purportedly support his argument, *U.S. v. Knox* and *U.S. v. Zukerman*. Though not binding authority, the two cases may be considered persuasive authority. In *U.S. v. Knox*, the court did not grant defendant compassionate release pursuant to 18 U.S.C. § 3582(c)(1), but instead recommended to the BOP that defendant receive early release pursuant to 18 U.S.C. § 3624(c)(1). *United States v. Knox*, 2020 WL 1487272 (S.D.N.Y. Mar. 27, 2020). Accordingly, it is not applicable to Defendant's request for compassionate release.

In *U.S. v. Zukerman*, the court waived defendant's requirement to exhaust administrative remedies prior to bringing his claim for compassionate release. *U.S. v. Zukerman*, 2020 WL 1659880 (S.D.N.Y. Apr. 3, 2020). The court acknowledged that "Section 3582(c)(1)(A) imposes a statutory exhaustion requirement that must be strictly enforced," but noted that "[e]ven where exhaustion is seemingly mandated by statute ..., the requirement is not absolute." [*Zukerman*, 2020 WL 1659880, at *3] (quoting *Washington v. Barr*, 925 F.3d 109 (2d Cir. 2019)). The court relied upon the 2nd Circuit decision of *Washington v. Barr* and found that the defendant's situation merited a waiver of the exhaustion requirement.

However, as recently explained by another court in the Southern District of New York, *Washington v. Barr* addressed a judicially created exhaustion requirement, not a statutorily created exhaustion requirement as found in 18 U.S.C. § 3582(c)(1).

> *Washington v. Barr* is not a statutorily-mandated exhaustion case. It addressed a judge-made exhaustion requirement which was subject to judge-made exceptions ... The passing reference to "exhaustion [that] is seemingly mandated by statute ... is not absolute" in *Barr* was not necessary to the Court of Appeals' holding.

[*Woodson*, 2020 WL 1673253, at *3] (rejecting the defendant's argument that the exhaustion requirement should be waived due to COVID-19).

> The reasoning in *Woodson* is further supported by the Supreme Court decision *McCarthy v. Madigan* (relied upon by the court in *Washington v. Barr*). The Court stated, "Where Congress specifically mandates, exhaustion is required. But where Congress has not clearly required exhaustion, sound judicial discretion governs." *McCarthy v. Madigan* 503 U.S. 140 (1992). The current situation is not one in which "Congress has not clearly required exhaustion." 18 U.S.C. 3582(c)(1) explicitly states that an inmate must first exhaust their administrative remedies prior to seeking relief from a court. Departing from this clear directive and creating an exception would be inconsistent with 18 U.S.C. 3582(c)(1) and Supreme Court precedent.

*Id*. at *2. *Alam* thus specifically undercut *Zukerman*, on which Defendant relies. (Doc. No. 475 at 4). And one week later, in *United States v. Felix*, No. 92-CR-80236, 2020 WL 1934963 (E.D. Mich. Apr. 22, 2020) (Cleland, J.), the court explained:

> Even if this Court had jurisdiction to rule on the most recent motion for compassionate release, filed by the defendant's daughter and citing the COVID-19 pandemic, it would be prohibited from entertaining that motion because the defendant has not exhausted the administrative remedies required under 18 U.S.C. § 3582(c)(1)(A) before seeking relief before this Court.

> Outside of a few narrow exceptions, § 3582(c) strongly prohibits a defendant's sentence from being modified after it has been imposed. 18 U.S.C. § 3582(c) ("The court may not modify a term of imprisonment once it has been imposed..."). The Sixth Circuit has firmly enforced that prohibition. *United States v. Ross*, 245 F.3d 577, 585–86 (6th Cir. 2001).
>
> One limited exception is the compassionate-release statute, 18 U.S.C. § 3582(c)(1)(A). Section 3582(c)(1)(A) prohibits, however, a defendant from moving for compassionate release, and the court from acting on that motion, until after the defendant has satisfied the statute's exhaustion requirement. This requirement demands that before a defendant moves for compassionate release in court, he *"must at least ask the Bureau of Prisons to do so on [his] behalf and give BOP thirty days to respond."* [*Raia*, 2020 WL 1647922, at *1]; 18 U.S.C. § 3582(c)(1)(A).
>
> This requirement gives the Bureau of Prisons a chance to review a defendant's request in the first instance. The Bureau of Prisons' review can result in the request being "resolved much more quickly and economically...than in litigation in federal court." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). It permits the Bureau of Prisons to gather the defendant's administrative and medical records, helping to "produce a useful"—and, here, necessary—"record for subsequent judicial consideration." *Id.*
>
> The Third Circuit recently denied a similar, unexhausted motion for compassionate release, holding that the COVID-19 pandemic does not permit inmates or district judges to bypass § 3582(c)(1)(A)'s mandatory exhaustion requirement. [*Raia*, 2020 WL 1647922, at *2]. The Third Circuit explained that "[g]iven Bureau of Prisons' shared desire for a safe and healthy prison environment,...strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added— and critical—importance." *Id.*

*Id.* at *3. Two days prior to the issuance of *Felix*, a different district judge reached a different conclusion. In *United States v. Atwi*, No. 18-20607, 2020 WL 1910152 (E.D. Mich. Apr. 20, 2020) (Michelsen, J.):

> As an initial matter, the parties disagree over whether the Court has the power to bypass the exhaustion requirement of the FSA. Atwi concedes that he had not pursued any administrative remedies at the time of his emergency motion. (ECF No. 27, PageID.200.) Instead, he asks the Court to waive the exhaustion requirement and asserts that it has the power to do so in light of the unusual circumstances presented by the current pandemic. (*Id.*) The Government disagrees, asserting that exhaustion is a mandatory statutory requirement that the Court cannot waive. (ECF No. 30, PageID.211.)

District courts across the country faced with the question of whether the FSA's exhaustion requirement is waivable have taken different approaches. Initially, a number of district courts, principally in the Second Circuit, have found that the exhaustion requirement could be waived, relying on a Second Circuit opinion which held that "exhaustion may be unnecessary where pursuing agency review would subject plaintiffs to undue prejudice." *Washington v. Barr*, 925 F.3d 109, 119 (2d Cir. 2019). *See*, *e.g.*, *United States v. Perez*, 17-cr-513-3, 2020 WL 1546422, at *3 (S.D.N.Y. Apr. 1, 2020); [*Zukerman*, 2020 WL 1659880, at *3]; [*Colvin*, 2020 WL 1613943, at *2]. *See also Miller v. United States*, No. CR 16-20222-1, 2020 WL 1814084, at *2 (E.D. Mich. Apr. 9, 2020) (adopting the reasoning of *Perez*).

But many other district courts across the country, including in this Circuit, have found that the exhaustion requirement was not waivable. *See, e.g.*, *United States v. Matthews*, No. 14-cr-20427, 2020 U.S. Dist. LEXIS 65934 (E.D. Mich. Apr. 15, 2020); [*Alam*, 2020 WL 1703881, at *2; *United States v. Hofmeister*, No. CV 5:16-13-KKC, 2020 WL 1811365, at *2 (E.D. Ky. Apr. 9, 2020). The reasoning of this approach is exemplified by *United States v. Holden*, No. 3:13-CR-00444-BR, 2020 WL 1673440 (D. Or. Apr. 6, 2020). The court in *Holden* refused to rely on *Washington* to find the FSA exhaustion requirement could be waived. The court noted that *Washington* "was a case brought pursuant to the Controlled Substances Act (CSA), 21 U.S.C. § 801, which 'does not mandate exhaustion of administrative remedies.'" *Holden*, 2020 WL 1673440, at *9 (quoting *Washington*, 925 F.3d at 116). Instead, the exhaustion doctrine under the CSA is judge-made, and thus subject to judge-made exceptions. *Ross v. Blake*, ––– U.S. ––––, 136 S. Ct. 1850, 1857, 195 L.Ed.2d 117 (2016) (citing *McKart v. United States*, 395 U.S. 185, 193, 89 S. Ct. 1657, 23 L.Ed.2d 194 (1969)). But the Supreme Court made clear in *Ross* that the same is not true of statutory exhaustion requirements, which are imposed by Congress, and thus cannot be altered based on judicial discretion. *Id.* at 1856–57. The conclusion of *Holden* that the exhaustion requirement in the FSA cannot be waived is supported by the only court of appeals to address the issue so far in connection with the coronavirus. *See United States v. Raia*, No. 20-1033, 2020 WL 1647922 (3d Cir. Apr. 2, 2020) (noting in dicta that the FSA exhaustion requirement "presents a glaring roadblock foreclosing compassionate release at this point").

But a third approach emerged in *United States v. Haney*, No. 19-CR-541, 2020 WL 1821988 (S.D.N.Y. Apr. 13, 2020) (Rakoff, J.). Unlike other courts in the Second Circuit, and like the *Holden* court, the court in *Haney* acknowledged that the FSA exhaustion requirement is imposed by statute and thus is not subject to a judge-made exception. *Id.* at *3. But, Judge Rakoff reasoned, by deeming exhaustion fulfilled if the BOP did not answer in 30 days, Congress evidenced that it wanted a defendant to have a "prompt judicial determination of whether he should be released." *Id.* at *3. Yet, "[b]ecause of the pandemic, prisoners have inundated the BOP with requests for release." *Id.* at *4. Thus, in Judge Rakoff's view, "in the

> extraordinary circumstances now faced by prisoners as a result of the COVID-19 virus and its capacity to spread in swift and deadly fashion, the objective of meaningful and prompt judicial resolution is clearly best served by permitting [a defendant] to seek relief before the 30-day period has elapsed." *Id.*
>
> This Court reads the FSA's exhaustion requirement similar to Judge Rakoff. The requirement states that if a defendant hears nothing from his warden about a compassionate-release motion in 30 days, he may proceed to court. *See* 18 U.S.C. § 3582(c)(1)(A). Thus, Congress contemplated that a defendant would be able to seek court redress quickly. But 30 days when the statute was passed and 30 days in the world of COVID-19 are very different. Congress likely did not contemplate that a once-in-a-lifetime pandemic would lead hundreds of federal prisoners to seek compassionate release all within a four-week window. Or, using Judge Rakoff's words, "[b]ecause of the pandemic, prisoners have inundated the BOP with requests for release." *Haney*, 2020 WL 1821988, at *4. Given both the once-in-a-lifetime circumstances of COVID-19 and the personal circumstances of Mr. Atwi—a non-violent offender with no prior criminal history who received a four-month sentence and thus appears to fall within the category of offender that The Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Section 12003(b), encourages the BOP to consider for early release—the Court finds that it would respect Congress' intent in placing a 30-day clock on the Warden to act, to allow Atwi's motion to be heard now. As far as similar future motions, those are left for another day. Today the Court goes no further than saying that Atwi may proceed without waiting 30 days or for the BOP's response.

*Id.* at *2–3. In *Atwi*, the court spoke of its decision as representing a third way, one that rejects both absolute positions, *i.e.,* the position that the district court never has discretion to disregard the exhaustion requirement and the position that the court always has the discretion (provided, of course, that it is no abused) to disregard the exhaustion requirement. But it seems to the Court that *Atwi* comes pretty close to embracing the latter position rather than a position in the middle. The rationale of *Atwi* appears to be that Congress meant what it said when it said 30 days have to pass— unless applicable circumstances are so extraordinary that Congress would not have meant what it said. Respectfully, the Court cannot accept this rationale. Since its inception, Congress unquestionably has been aware of the ever-present potential for national emergencies.[5] Congress

---

[5] Indeed, Congress was created in its original (pre-Constitution) form (the First Continental Congress in 1774 and the Second Continental Congress in 1775) in response to national emergencies occasioned by conflict with the

unquestionably has also been aware of the ever-present potential for the emergence of circumstances that severely strain federal government resources. And Congress knows how to build in exceptions to otherwise mandatory statutory requirements (including otherwise mandatory deadlines and waiting periods) based on "exceptional circumstances" or something along those lines; Congress has done this over and over, as a canvassing of the United States Code would reveal. Thus, the Court concludes that if Congress intended an exception to the otherwise mandatory statutory 30-day waiting period based on exceptional circumstances, a national emergency, or strained federal government resources, it would have so indicated by prescribing such an exception in the statute.[6] And Congress did not do so.

The Court gleans that in *Atwi*, the court was driven by a desire to avoid what it perceived as an unfair and senseless result. The Court has great appreciation for such aspirations, and it understands that strict adherence to exhaustion requirements can occasion what may be considered harsh results. But as the Supreme Court said very recently, in announcing a decision of statutory construction that it admitted could foster "difficult" results (in the "wrenching" context of removal

---

British Government (namely, as the history buff will recall, the British Parliament's imposition of the Coercive Acts and the Battles of Lexington and Concord, respectively).

[6] The Court also disputes the characterization of *Raia*'s conclusion that failure to exhaust administrative remedies forecloses compassionate release as mere "dicta." As background, while serving a three-month sentence that was under appeal because the Government contended it was too lenient, the defendant-appellee (Raia) filed in the district court a motion for compassionate release. *Raia*, 954 F.3d at 596. The district court denied the motion on the grounds that the pending appeal divested it of jurisdiction. *Id.* Then, instead of appealing that decision, Raia "filed a motion asking [the Third Circuit] to decide his compassionate-release motion. Alternatively, he ask[ed the Third Circuit] to return jurisdiction to the District Court by dismissing the government's appeal without prejudice." *Id.*

In seeking these alternative remedies, Raia relied on Fed. R. App. P. 3(a)(2), which notes: "An appellant's failure to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but is ground only for the court of appeals to act as it considers appropriate, including dismissing the appeal." The Third Circuit's conclusion that the exhaustion requirement was non-waivable was the entire basis for denying the defendant-appellant's alternative request that jurisdiction be returned to the district court to consider his motion for compassionate release. Specifically, after denying Raia's primary request, the Third Circuit also rejected his alternative request because the (alternatively) requested remand would be futile *because* Raia "failed to comply with § 3582(c)(1)(A)'s exhaustion requirement." *Id.* at 597. As the sole basis for denying an alternative request for relief, the Third Circuit's view regarding the conclusive effect of failing to satisfy the exhaustion requirement does not seem to be mere dicta.

from the United States of a lawful permanent resident), "Congress may of course amend the law at any time. In the meantime, the Court is constrained to apply the law as enacted by Congress." *Barton v. Barr*, No. 18-725, 2020 WL 1941965, at *10 (U.S. Apr. 23, 2020). The Court here is required to do likewise.

Thus, the Court respectfully rejects *Atwi*'s approach, as well as the views of the (out-of-circuit) opinions on which Defendant relies. Instead, the Court sides with the other district judges within this Circuit, as well as numerous other like-minded judges across the nation. These judges, the Court believes, have skillfully and, collectively, thoroughly set forth the basis for concluding that a district court cannot disregard the exhaustion requirement. The Court adopts this reasoning and will adhere to it, subject, of course, to a contrary future decision from the Sixth Circuit or the Supreme Court.

## CONCLUSION

The Court cannot consider the Motion until the exhaustion requirement of 18 U.S.C. § 3582(c)(1)(A(i) is satisfied. Thus, the Motion is DENIED without prejudice to be refiled once the time of exhaustion has arrived. At that time, or even before, the parties are free to make filings of an evidentiary nature, given that the Court is loath to make any decision based on purported facts that are supported by nothing more than counsel's statement in a brief.[7]

IT IS SO ORDERED.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[7] The Court is confident that counsel in this case understand this, and the Court does not mean to suggest that they have proceeded otherwise thus far. But this principle is important to keep in mind going forward; to the extent that either party wishes to rely on facts regarding the status of the COVID-19 pandemic, conditions at the BOP facility where Defendant is confined, Defendant's current medical condition, and so forth, counsel should provide some support beyond a bald statement of counsel in a filing.